The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | June 9, 2025 |
| To: | SCOTT SELL<br>THOMAS, COON, NEWTON & FROST<br>820 SW SECOND AVENUE<br>SUITE #200<br>PORTLAND OR 97204 |
| Attn: | Erin Daniels/Scott Sell |
| Fax: | (503) 273-9175 |
| From: | Keisha S.<br>Claims Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages<br>(Including Cover): | 9 |
| RE:<br><br>Claim #: 15113454<br>Claimant: Steven Weller<br><br>Apple Inc. | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT
2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

June 9, 2025

Scott Sell
Thomas, Coon, Newton & Frost
820 SW SECOND AVENUE
SUITE #200
PORTLAND, OR 97204

RE: Long Term Disability (LTD) Benefits
Apple Inc.
Claim #: 15113454
Claimant: Steven Weller

Dear Scott Sell:

We reviewed the appeal request for Long Term Disability ("LTD") benefits behalf of Steven Weller, and we have maintained the decision to deny benefits beyond September 10, 2024.

**Initial Claim Decision**

Mr. Weller submitted a claim for his absence from work as of August 21, 2023, as a result of spinal stenosis, cervical disc degeneration, central pain syndrome, and fibromyalgia. LTD benefits were approved from February 19, 2024 – September 10, 2024. Benefits beyond September 10, 2024 were denied as the evaluation concluded he was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated September 10, 2024. Mr. Weller was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, he was advised to submit the following information:

*Hospital records, discharge summaries, exam findings, office visit notes, operative reports, office visit notes, diagnostic test results, referrals,physical therapy records, consultations, restrictions, limitations, treatment plans, and any other medical information, from August 21, 2023 through present from Dr. Daniel Lavery, Dr. Brian Lee, Dr. Kellie Foster, Dr. Chad Esterberg, or any other*
*treating provider that would preclude you from performing the material and substantial duties of your own occupation.*

**Appeal**

In your letter of appeal dated March 7, 2025 you stated Mr. Weller has continued to seek and

receive care for his ongoing chronic pain from multiple providers. You stated his treatment has led to his primary diagnosis of central pain syndrome and fibromyalgia. You stated given Mr. Weller's limitations he is incapable of performing any occupation and disabled under the terms of his policy.

In support of his claim, you submitted the following information:

- Letter from Dr. Brett Quave dated March 7, 2025
- Medical records from Dr. Quave from February 12, 2025
- Medical records from Kaiser Permanente from March 1, 2024 – January 29, 2025

**Appeal Evaluation**

In your letter of appeal you stated Dr. Laynos-Moses agreed that Mr. Weller was disabled under the policy, however Lincoln Financial reversed our position based on conclusion in a review performed by Dr. Richarson. While Dr. Laynos-Moses' review did support restrictions and limitations that initially precluded Mr. Weller from performing his occupation, she did not agree with his treating providers that he was unable to work. She noted the records do not identify clinical abnormalities of severity to concur with a decision of no work status. Mr. Weller's conditions can be accommodated in a full-time work setting with the appropriate restrictions and limitations. In addition, Dr. Laynos-Moses did not suggest that the recommended restrictions and limitations were permanent. She recommended reassessment around August 2024.

During the claim evaluation of ongoing benefits, Mr. Weller's claim was reviewed by Henry Richardson, M.D., an independent physician who is board certified in Physical Medicine and Rehabilitation. Based on his review of the medical records, Dr. Richardson concluded:

*Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, there are no supported findings of impairment from 8/1/2024 to the present.*

*The claimant is a 62-year-old male who stopped working due to spinal stenosis of the cervical region. The claimant's job description includes sedentary work and working at the desk for up to eight hours per day. History of diagnoses include right shoulder joint pain, right ulnar neuropathy, osteoporosis, bilateral hearing loss, bilateral hand pain, and subcutaneous mass. The claimant has had a history of pain in the right shoulder, left knee pain, and elbow pain. In March 2023, the claimant underwent a cortisone shot with clear benefits to pain relief.*

*The claimant is being treated and evaluated for spinal stenosis of the cervical region. Physical exam reveals 5/5 strength in the hand, finger strength intact, sensation intact to light touch, normal gait, during the timeframe in question, able to complete sit-to-stand, able to complete stand-to-supine transfers, normal range of motion of the hips, negative straight leg raise test, and negative Thompson test. MRI of the cervical spine reveals mild left C6-C7 foraminal stenosis with moderate discogenic marrow edema and facet synovitis. It is acknowledged that the claimant reports persistent and chronic pain in multiple musculoskeletal sites with some difficulty with ambulation at times, but this is inconsistent as it is noted that the claimant was in a motorized wheelchair during April 2024, however, the claimant was then able to perform sit to stand and sit*

*to supine transfers in July 2024, then in August 2024 it states the claimant can only tolerate standing for 1 to 2 minutes on physical therapy notes showing inconsistencies within the records. Considering the clinical findings including evidence of stability in his chronic pain and no evidence of any acute distress during office visits, no evidence of any urgent care visits for acute pain or escalation in treatment due to uncontrolled pain, the overall treatment intensity and reported functional activities, the medical evidence does not support restrictions and limitations precluding the performance of the outlined occupational demands. Based on the review of the medical records, the claimant has not reported side effects of medications.*

*In conclusion, the weight of the medical evidence and file information does not support restrictions and limitations precluding occupational demands.*

We acknowledge that Dr. Foster recommended Mr. Weller be placed out of work from October 2024 through January 2025, however she provided no rationale to support him being out of work. In addition, Dr. Quave wrote stating that Mr. Weller has significant pain disorders that limits his functioning and recommends he be limited to using his hand and fingers less than one third of any workday. He states he would be incapable of performing even in a sit/stand modified sedentary job. He states that he was positive for both allodynia and hyperalgesia on examination, but in the progress notes his physical exam findings note there is no allodynia, hyperalgesia, erythema, or edema of the upper extremities. The progress notes contradicts statements made in his letter. Therefore, we afforded less weight to Dr. Quave's assessments based on this contradiction.

During the review of Mr. Weller's appeal, his claim was reviewed by Howard Grattan, M.D., an independent physician who is board certified in Pain Medicine. Based on his review of the medical records, Dr. Grattan concluded:

*Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, the supported level of impairment does not translate into restrictions and limitations from 09/11/2024 to the present and beyond. From 09/11/2024 to the present and beyond, the available clinical documentation does not support the presence of a functional impairment that would preclude the claimant from performing work-related activities. While the claimant has a history of chronic pain and joint discomfort, the record demonstrates overall improvement and stabilization of symptoms with ongoing treatment and therapy. On 09/13/2024, the claimant received right intra-articular hip and left knee joint injections, indicating active management of localized pain. By 12/20/2024, Sadie Morse, PA, noted that the claimant was encouraged by slow progress, reporting increased mobility, discontinued use of naproxen, and no longer requiring ice, suggesting improved symptom control. Occupational therapy notes dated 12/31/2024 describe chronic pain but also indicate consistent engagement with a home exercise program.*

*Further, on 01/22/2025, the claimant reported steady improvement in right hip pain and was still actively incorporating physical therapy (PT) exercises. Though the claimant continued to use an electric wheelchair for some outdoor activities, the claimant did not require it at home, reflecting increased functional independence. This is further supported by notes from 01/29/2025, which document ongoing improvement with walking, correcting foot position, and ease with home exercises.*

*Additionally, on 01/27/2025, Dr. Kellie Foster concluded that no further neurological testing was necessary and that all laboratory, imaging, and electrodiagnostic studies for upper extremity pain had been reassuring. Despite earlier reports of pain and mobility concerns, the claimant's treatment history reveals gradual and consistent improvement, functional adaptation, and increased physical tolerance over time. The claimant's demonstrated ability to ambulate within the home without assistive devices, participate in exercise, and show progress with therapy supports the conclusion that the claimant was not impaired from 09/11/2024 onward. There is a lack of consistent clinical findings correlating with total functional incapacity, and the demonstrated activity levels, including therapeutic participation and mobility gains, suggest the claimant retains the capacity for unrestricted work-related tasks.*

On March 31, 2025, we sent your office a letter which included a copy of the peer review performed in connection with your request for reconsideration. You were given an opportunity to review and respond with any additional information you would like considered before a final determination was made on Mr. Weller's appeal. We asked you to respond by April 20, 2025.

In response we received a letter from Dr. Brett Quave dated April 18, 2025. Dr. Quave's letter provided rebuttals to the conclusions in Dr. Grattan's peer review.

Upon receipt of the additional information Mr. Weller's claim was sent to Dr. Grattan for an addendum review. The addendum concluded:

*The newly submitted documentation and letter from Dr. Brett Quave dated 04/18/25 have been considered in full. While clinical evidence, including imaging studies, electrodiagnostic testing, and physical examinations, does not demonstrate significant neurological deficits or progressive musculoskeletal deterioration, the claimant's reported ongoing pain and partial reliance on a wheelchair for outdoor activities suggest that some level of functional impairment is reasonable to acknowledge. Chronic pain syndromes such as fibromyalgia and central pain syndrome can result in self-reported symptoms of pain and fatigue, even in the absence of measurable deficits. It is appropriate to support restrictions and limitations involving prolonged standing, walking, and frequent or repetitive fine motor tasks such as grasping or handling small objects.*

*However, the overall clinical picture, including evidence of improved mobility, increased exercise tolerance, discontinuation of assistive devices within the home, and consistent participation in therapy, indicates that the claimant retains functional capacity for modified sedentary work with appropriate accommodations.*

*Dr. Quave's opinion that the claimant would be incapable of performing even a sit-stand modified sedentary occupation is considered disproportionate to the clinical findings and clinical progress documented throughout the treatment record. The conclusions appear primarily based on self-reported complaints rather than reproducible impairments, and there is no consistent documentation of profound weakness, sensory loss, or balance deficits that would fully preclude occupational function. While recognizing the presence of chronic pain, the claimant's demonstrated activities, therapeutic gains, and relatively benign diagnostic findings do not substantiate the extreme level of impairment asserted by Dr. Quave. Therefore, some restrictions and limitations are supported, but complete work incapacity is not medically justified.*

*From a Pain Medicine perspective, the claimant would have the capacity to sustain full-time*

*employment with the following restrictions and limitations:*

*Lifting, carrying, pushing, and pulling 10 pounds occasionally (1 to 33% of the time) and 5 pounds frequently (33- 66% of the time) bilaterally.*
*Walking for up to 15 minutes at a time for a total of 3 hours per day.*
*Standing for up to 15 minutes at a time for a total of 3 hours per day.*
*Sitting unrestricted.*
*Occasionally (1-33% of the time) twisting, bending, kneeling, crouching, and squatting.*
*Occasionally (1 to 33% of the time), climbing stairs.*
*No climbing ladders and no working at heights.*
*Frequently reaching, fingering, handling, or feeling bilaterally.*

*There are no additional restrictions or limitations supported.*

Dr. Grattan's recommended restrictions and limitations, fall within the demands of Mr. Weller's occupation.

On May 6, 2025, we sent your office a copy of the addendum performed in connection with your request for reconsideration. You were given another opportunity to review and respond with any additional information you would like considered before a final determination was made on Mr. Weller's appeal. We asked you to respond by May 19, 2025.

To date we have not received any additional information or medical records to consider for Mr. Weller's appeal. We received confirmation from Erin Daniels that you did not intend to submit any further information regarding Mr. Weller's appeal.

Our review of the appeal does not offer any findings to alter the prior conclusion. The medical review performed in connection with Mr. Weller's appeal concluded the medical information available for review is insufficient to support that he cannot engage in full time employment within the recommended restrictions. The records show evidence of improved mobility, increased exercise tolerance, discontinuation of assistive devices within the home, and consistent participation in therapy, which indicates Mr. Weller retains functional capacity for modified sedentary work with appropriate accommodations.

We are aware that Mr. Weller's claim for Social Security Disability Income benefits has been awarded. It should be noted that any ruling by the Social Security Administration (SSA) does not determine entitlement to benefits under the terms and conditions of Apple Inc.'s Group Disability Income Policy.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Mr. Weller's entire claim. In summary, we acknowledge that he may have continued to experience some symptoms associated with his condition beyond September 10, 2024. However, the information does not contain significant exam findings, diagnostic test results or other forms of medical documentation supporting his impairments and symptoms remained of such severity, frequency and duration that they resulted in restrictions or limitations rendering him unable to perform the duties of his occupation after that date.

Having carefully considered all of the information submitted in support of Mr. Weller's claim, our position remains that proof of his continued disability in accordance with the Policy provisions after September 10, 2024 has not been provided. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
>
> *i. that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*
>
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity.*
>
> ***"Substantial and Material Acts"*** *means acts that are normally required for the performance of the Covered Person's Own Occupation and cannot be reasonably omitted or modified.*
>
> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.*
>
> ***"Proof"*** *means written proof covering the occurrence, the character and the extent of the loss for which the claim is made.*
>
> ***Disability Benefit***
>
> *When Lincoln receives Proof that a Covered Person is Disabled due to Injury or Sickness, Lincoln will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The Proof must be at the Covered Person's expense.*
>
> *For purposes of determining Disability, the Injury or Sickness must occur and Disability must begin while the Employee is insured for this coverage.*
>
> ***Discontinuation of the Long Term Disability Benefit***
>
> *The Monthly Benefit will cease on the earliest of:*

…

*3.. the date the Covered Person is no longer Disabled according to this policy;*

…

***Proofs of Loss***

*Written proof of loss must be furnished to the insurer, in the case of claim for loss for Long Term Disability benefits, within 90 days after the termination of the period for which the insurer is liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the employee, later than one year from the time proof is otherwise required.*

***Legal Actions***

*No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Mr. Weller was entitled to appeal the decision made by Lincoln Financial Group, and to submit any additional information he wished to be considered as part of the appeal. Lincoln Financial Group has conducted a full and fair review of his appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Mr. Weller's administrative right to review has been exhausted; no further review will be conducted by Lincoln Financial Group and his claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to his claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is September 10, 2027.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and

defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln Financial Group are based on the provisions outlined in Apple Inc.’s Group Disability Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

In addition, your claim may be reviewed further by the California Department of Insurance. Their address is California Department of Insurance, Consumer Services Division, 300 South Spring St., South Tower, Los Angeles, CA 90013 and the Consumer Hotline is 1-800-927-4357.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata’ hane’go shíká a’doowoł nínízingo saad hosíníłį́į’ dóó ná’ookąąh nííní’ą́ągo naaltsoos nííníłtsoozígíí hazho’ó bik’idi’deeshtį́įł nínízingo doo bą́ąh ílínígóó níká a’doowoł éí biniiyé shił hodíílnih áko ákwe’égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Keisha S.
Claims Resolution Specialist
Phone No.: (888) 437-7611 Ext. 14099
Secure Fax No.: (603) 334-0401